NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROBERT VANDE KROL, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

SUPERSTITION FIRE & MEDICAL, *Respondent Employer,*

BENCHMARK INSURANCE, *Respondent Insurance Carrier.*

No. 1 CA-IC 22-0046

FILED 10-31-2025

---

Special Action - Industrial Commission
ICA Claim No. 20210280125
Carrier Claim No. 7138292
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Thomas C. Whitley, Nicholas C. Whitley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Lundmark Barberich La Mont & Puig PC, Phoenix
By Kevin E. Karges, David T. Lundmark
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

---

**C A T L E T T**, Judge:

**¶1**		This appeal returns on remand from the Arizona Supreme Court for us "to determine whether the ALJ correctly interpreted and applied the 2017 statute to Vande Krol's claim." *See Krol v. Indus. Comm'n*, 259 Ariz. 261, 276 ¶ 61 (2025).

**¶2**		Arizona law contains a rebuttable presumption that certain types of cancer, including brain cancer, arise out of a firefighter's employment and are thus eligible for workers' compensation. *See* A.R.S. § 23-901.01(B). Under the 2017 version of A.R.S. § 23-901.01, the presumption applies if a firefighter, among other things, "was exposed to a known carcinogen," "informed the [fire] department of this exposure," and "the carcinogen is reasonably related to the cancer." A.R.S. § 23-901.01(C)(3) (2017).

**¶3**		The third requirement—"the carcinogen is reasonably related to the cancer"—is at issue here. A.R.S. § 23-901.01(C)(3) (2017). Specifically, we must determine whether a firefighter must show a reasonable relationship between the carcinogen to which he was exposed and his specific type of brain cancer, or instead to brain cancer more generally. The petitioner here, Robert Vande Krol ("Vande Krol"), argues the Administrative Law Judge ("ALJ") erred by requiring him to show a reasonable relationship between a carcinogen and his specific type of brain cancer. We agree. The phrase "the cancer" in § 23-901.01(C)(3) requires a firefighter to show only a reasonable relationship between a carcinogen to which the firefighter was exposed and one of the types of cancers enumerated in § 23-901.01(B)(1), including brain cancer.

**¶4**		Because the ALJ used a different interpretation, we set aside the award and remand for the ALJ to apply our interpretation.

**FACTS AND PROCEDURAL HISTORY**

**¶5**		Beginning in 2002, Superstition Fire and Medical Department ("Superstition") employed Vande Krol as a firefighter. Before starting employment, Vande Krol underwent a physical examination. It showed no

sign of cancer.  Vande Krol's fire station, where he worked and slept, was located next to a large and active communications cell tower.  Over his eighteen-year career, Vande Krol was assigned to hazardous duty and helped fight over 200 fires, during which he was exposed to various known carcinogens, including smoke, soot, diesel fuel, and firefighting foam.

**¶6**       In August 2020, as part of his required annual examination, Vande Krol underwent a full body cancer screening.  The screening found a tumor in Vande Krol's brain, which an MRI showed was possibly a low-grade astrocytoma or oligodendroglioma.  A genetic test revealed Vande Krol had no genetic predisposition for brain cancer.

**¶7**       In October 2020, Vande Krol underwent brain surgery (a right craniotomy), which successfully removed the tumor.  Thereafter, Vande Krol was diagnosed with oligodendroglioma, a rare form of brain cancer. After surgery, Vande Krol lost peripheral vision in his left eye, and he now suffers cognitive impairment, vertigo, headaches, and muscle weakness. Because Vande Krol could no longer perform his firefighting duties, his doctor recommended medical retirement.

**¶8**       Vande Krol filed a workers' compensation claim with Superstition's insurer, Benchmark Insurance Company ("Benchmark"), stating that his brain cancer was a covered occupational disease. Benchmark denied the claim, so Vande Krol requested a hearing before an ALJ.  Vande Krol maintained that his brain cancer qualified as a compensable occupational disease under A.R.S. § 23-901.01(B)—the statutory presumption available to firefighters diagnosed with certain cancers resulting in disability or death.

**¶9**       At the hearing, the ALJ heard testimony from Vande Krol and two medical experts.  Dr. Smith, a former firefighter and current physician, testified for Vande Krol.  He opined that the "probable cause" of Vande Krol's brain cancer was a combination of exposure to (1) the byproducts of combustion from fires, (2) firefighting foam, (3) diesel fumes, and (4) radiation emitted from the cell tower near his fire station.

**¶10**       Dr. Peter Ferrara, a surgical oncologist, testified for Superstition and Benchmark (together, "Respondents").  Dr. Ferrara testified that the only "definite caus[e] of brain cancers is ionizing radiation," and there was no evidence of such exposure.  Dr. Ferrara said he could not opine to a "reasonable degree of medical probability" that Vande Krol's exposure to any carcinogens commonly associated with firefighting were related to his "type of brain cancer."

**¶11**      The ALJ issued a written award denying Vande Krol's claim. The ALJ found that Vande Krol was diagnosed with oligodendroglioma, a type of brain cancer, and acknowledged that "brain cancer [is] a type of cancer that can have the occupational disease presumption for firefighters[.]"  The ALJ determined Vande Krol satisfied the requirements of A.R.S. § 23-901.01(C), save for one.  Based on the ALJ's interpretation of A.R.S. § 23-901.01(C)(3), she concluded Vande Krol failed to prove that his exposure to a specific carcinogen caused his specific type of brain cancer (oligodendroglioma).  And, because Vande Krol had not made that showing, the ALJ concluded Vande Krol had not suffered a compensable injury entitling him to compensation.

**¶12**      Vande Krol requested additional review.  But the ALJ affirmed her decision, reiterating that Vande Krol's burden was to show that "the carcinogens caused [his] specific type of cancer."

**¶13**      Vande Krol timely sought our review.  We have jurisdiction. A.R.S. § 12-120.21(B); A.R.S. § 23-943(H); Ariz. R.P. Spec. Act. 10.

## DISCUSSION

**¶14**      When reviewing a worker's compensation award, we "defer to the ALJ's factual findings but review questions of law de novo."  *Special Fund Div. v. Indus. Comm'n*, 252 Ariz. 267, 269 ¶ 6 (App. 2021).  This case requires us to engage in statutory interpretation, which we do de novo. *Voice of Surprise v. Hall*, 255 Ariz. 510, 513 ¶ 11 (2023).

**¶15**      The primary issue we decide is what Vande Krol had to show to satisfy § 23-901.01(C)(3).  Respondents contend § 23-901.01(C)(3) requires a reasonable relationship between exposure to a carcinogen and a claimant's specific type of brain cancer.  Vande Krol responds that § 23-901.01(C) requires only that a carcinogen to which he was exposed be reasonably related to brain cancer generally.  So the parties' dispute turns on what "the cancer" in § 23-901.01(C)(3) means.

## I.      Occupational Diseases Generally

**¶16**      In the usual workers' compensation case, a claimant must satisfy A.R.S. § 23-901.01(A) to establish that a condition is an occupational disease arising out of employment.  A.R.S. § 23-901.01(A); *Phx. Pest Control v. Indus. Comm'n*, 134 Ariz. 215, 219 (App. 1982).  That subsection requires proof of direct and proximate causation.  It requires proof of "a *direct causal connection* between the conditions under which the work is performed and the occupational disease." A.R.S. § 23-901.01(A)(1) (emphasis added).  And

it requires that "[t]he disease can be fairly traced to the employment as the *proximate cause*." A.R.S. § 23-901.01(A)(3) (emphasis added). These requirements ensure the disease "is one related to employment, and not one which is part of the ordinary hazards of life to which the general public is exposed." *Ford v. Indus. Comm'n*, 145 Ariz. 509, 518 (1985).

## II.    The Firefighter Presumption

**¶17**        Beginning in 2001, Arizona joined a growing number of states to enact a statutory presumption easing causation for firefighters with certain cancers. *See* A.R.S. §§ 23-901.01(B)–(E) (2001); 2001 Ariz. Sess. Laws ch. 192, § 1 (1st Reg. Sess.); *see also Krol*, 259 Ariz. at 265 ¶ 2 (summarizing the legislative history of A.R.S. § 23-901.01's statutory presumption for firefighters). In 2017, the legislature amended the statute to create a burden-shifting framework. *See* A.R.S. §§ 23-901.01(B)–(G) (2017); 2017 Ariz. Sess. Laws ch. 318, § 1 (1st Reg. Sess.). We detail the framework as it existed in 2017 because that was the version in place when Vande Krol filed his claim. *See Krol*, 259 Ariz. at 274 ¶ 50.

**¶18**        Subsection 23-901.01(B) ("(B)") provides that certain cancers suffered by firefighters resulting in death or disability are presumed to be "occupational disease[s] . . . deemed to arise out of employment." Relevant here, the presumption applies to "brain, bladder, rectal or colon cancer, lymphoma, leukemia or adenocarcinoma or mesothelioma of the respiratory tract[.]" A.R.S. § 23-901.01(B)(1).

**¶19**        Subsection 23-901.01(C) ("(C)") "imposes a lesser burden for certain occupational diseases occurring in firefighters and peace officers." *Hahn v. Indus. Comm'n*, 227 Ariz. 72, 75 ¶ 10 (App. 2011). It lists the following requirements to obtain the presumption:

1.    The firefighter . . . passed a physical examination before employment and the examination did not indicate evidence of cancer.

2.    The firefighter . . . was assigned to hazardous duty for at least five years.

3.    The firefighter . . . [i] was exposed to a known carcinogen as defined by the international agency for research on cancer and [ii] informed the department of this exposure, and [iii] the carcinogen is reasonably related to the cancer.

A.R.S. § 23-901.01(C)(1)–(3).

**¶20** Subsection 23-901.01(F) ("(F)") provides that the presumption in (B) can be rebutted by showing "by a preponderance of the evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen[.]" A.R.S. § 23-901.01(F).

### III. "The Cancer" In (C)

**¶21** Having described the framework, we turn to the interpretive question posed. When interpreting a statute, we begin with its text. *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 15 (2024). When the text is unambiguous, we apply it. *See Shea v. Maricopa County*, 255 Ariz. 116, 120–21 ¶ 19 (2023). We "determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023). That is, we read statutes contextually "to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

**¶22** Section 23-901.01 first uses the term "cancer" in (B), which lists the cancers a firefighter must be diagnosed with to qualify for the presumption. Relevant here, (B)(1) provides that the presumption applies to (1) firefighters with (2) the following cancers: "brain, bladder, rectal or colon cancer, lymphoma, leukemia or adenocarcinoma or mesothelioma of the respiratory tract[.]" A.R.S. § 23-901.01(B)(1). Vande Krol satisfied those two requirements—he was a firefighter diagnosed with brain cancer. As the ALJ concluded, Vande Krol could invoke (B)(1) because "*brain cancer* [is] a type of cancer that can have the occupational presumption" apply. (Emphasis added).

**¶23** The question then became whether Vande Krol qualified for the presumption by meeting the conditions in (C). That subsection expressly ties (B) and (C) together with the phrase "[t]he presumptions provided in subsection B of this section[.]" Reading (B) and (C) together, a firefighter with one of the enumerated cancers—for example, brain cancer—is presumed to have an occupational disease arising out of employment once he satisfies (C)'s requirements.

**¶24** Turning to the one requirement at issue here, (C)(3) requires "the carcinogen" at issue to be "reasonably related to *the* cancer." A.R.S. § 23-901.01(C)(3) (emphasis added). What does "the cancer" mean? The legislature indicated what it means by using a definite article—"the"—before "cancer." Using "the" before cancer means the term "cancer" in

(C)(3) is the same as "the cancer" previously described in the statute. *See Smith v. Melson, Inc.*, 135 Ariz. 119, 121 (1983) ("Unlike the indefinite article 'a,' 'the' is a definite article used in reference to a particular thing[.]"); *Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("[G]rammar and usage establish that 'the' is a function word . . . indicat[ing] that a following noun . . . has been previously specified by context.") (cleaned up). The statute previously uses the term "cancer" in (B), which lists the types of cancer subject to the presumption, including brain cancer in (B)(1). So, read together, (B) lists types of cancers and "the cancer" in (C)(3) refers to those same types. So to obtain the presumption in (B), a firefighter must show only a reasonable relationship between a type of cancer in (B) and the carcinogen or carcinogens to which he was exposed.

¶25        Other text within § 23-901.01 supports this interpretation. Subsection (D) explains which claimants may seek the presumption in (B). A.R.S. § 23-901.01(D). It explains that the presumption applies to a former firefighter who is 65 or younger and is diagnosed "with a cancer that is listed in subsection B" not more than 15 years after his last employment date. A.R.S. § 23-901.01(D). Tying the statute's application to "a cancer that is listed in subsection B" further supports that "the cancer" in (C) also refers to the cancers listed in (B).

¶26        Subsection (F) ("(F)") also uses that definite phrase. It says the presumptions in (B) may be rebutted with evidence "that there is a specific cause of *the cancer*" other than from an occupational exposure. A.R.S. § 23-901.01(F) (emphasis added). Again, like (C) and (E) before it, (F) uses the phrase "the cancer" to refer to the cancers listed in (B).

¶27        Subsection (E) ("(E)") follows a framework like (B) and (C). Subsection (E) says the presumption does not "apply to cancers of the respiratory tract" if there is evidence that the firefighter's exposure to cigarettes or tobacco products outside employment "is a substantial contributing cause in the development of *the cancer*." A.R.S. § 23-901.01(E) (emphasis added). Like (B) and (C), the beginning of (E) describes the types of cancers to which it applies—"cancers of the respiratory tract"—and the end of (E) again refers to those cancers with the definite phrase "the cancer."

¶28        Precedent supports our interpretation. In *Hahn*, we interpreted the "reasonable relationship" requirement in a prior version of § 23-901.01. 227 Ariz. at 75–76 ¶¶ 13–16. That version had language materially similar to the version we now interpret. *See id.* at 75 ¶ 10. We observed in *Hahn* that "a firefighter need only show a *general* causal link between a carcinogen to which he was exposed and one of the enumerated

cancers to qualify for the presumption, not that the exposure caused his particular cancer." *Id.* at 76 ¶ 16. And, in *Aguirre v. Industrial Commission of Arizona*, we repeated that statement from *Hahn*. 245 Ariz. 587, 593 ¶ 27 (App. 2018), *aff'd in part and vacated in part*, 247 Ariz. 75 (2019).

**¶29**      Applying our interpretation, Vande Krol's claim is subject to the presumption in (B)(1) because (everyone agrees) he had brain cancer. Under (C)(3), Vande Krol had to prove that a carcinogen or carcinogens to which he was exposed is reasonably related to the type of cancer making him eligible under (B)(1)—namely, brain cancer. He was not required to show that the carcinogens are reasonably related to some specific type, or subset, of brain cancer, like oligodendroglioma.

**¶30**      For three reasons, we reject the Respondents' interpretation. First, their interpretation—which requires a connection between a carcinogen and a particular type of cancer that is a subset of those found in (B)—narrows the meaning of "the cancer" as used in (C)(3) by imposing a requirement nowhere found in the text. Had the legislature wanted to impose that requirement it would have used a different phrase in (C)(3)— perhaps "the specific type of cancer" or the "firefighter's cancer." The lack of any such limiting language demonstrates that "the cancer" in (C)(3) refers to those discussed in (B), and not a more specific type of cancer.

**¶31**      In fact, subsection (F) provides that to rebut the presumption, the employer/insurer must present evidence of a "*specific* cause of the cancer other than an occupational exposure." A.R.S. § 23-901.01(F). This use of "specific" in (F) shows that the legislature was not shy about imposing specificity requirements when it desired. It chose not to do so in (C)(3); it is not for us to disturb that choice. *See City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973) (courts do not "rewrite statutes").

**¶32**      Second, Respondents' interpretation would result in the term "cancer" in the statute having inconsistent meanings. In (D) and (F), "cancer" refers to those cancers listed in (B). But Respondents would have us interpret "cancer" in (C)(3) to refer to the firefighter's specific type of cancer. We presume that "identical words used in different parts of the same Act are intended to have the same meaning." *Obregon v. Indus. Comm'n*, 217 Ariz. 612, 616 ¶ 21 (App. 2008) (cleaned up); *see also Fann v. State*, 251 Ariz. 425, 442 ¶ 60 (2021). Respondents have not overcome this presumption and thus we apply it here—"cancer" in (C)(3), (D), and (F) refers to a type of cancer listed in (B).

**¶33** Third, the legislature exercised judgment about which cancers to include or not in (B) — it included only certain types of cancers. *See* A.R.S. § 23-901.01(B). It then made a second judgment about which cancers to include in (B)(1) and which to include in (B)(2). *See* A.R.S. §§ 23-901.01(B), (C). For example, the legislature included "lymphoma" in (B)(1) and "non-[H]odgkin's lymphoma" in (B)(2), and it included "mesothelioma of the respiratory tract" in (B)(1) and "lung" cancer in (B)(2). Had the legislature wanted to include specific types of brain cancer in (B)(1) or (B)(2) it could have done so. But it did not. If we were to require a reasonable relationship between a carcinogen and a specific type of brain cancer, it would upset the legislature's choice to identify "brain cancer" as a type of cancer that can trigger the presumption.

**¶34** We conclude that, under (C)(3), a firefighter need not show that his exposure to a carcinogen is reasonably related to his specific type of brain cancer. Instead, he must show that a carcinogen to which he was exposed is reasonably related to brain cancer generally.

## CONCLUSION

**¶35** We set aside the award and remand for the ALJ to determine whether Vande Krol showed that a carcinogen to which he was exposed is reasonably related to brain cancer. *See* A.R.S. § 23-951(B); *Kennecott Copper Corp. v. Indus. Comm'n*, 62 Ariz. 516, 521–22, 528 (1945) (reviewing court can only set aside the award and must assume on rehearing due consideration will be given to facts). If Vande Krol did so, then the ALJ must decide whether, under (F), Respondents rebutted the presumption in (B)(1). If not, then Vande Krol is entitled to workers' compensation.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR